**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

**KAYLA ELLIS,**

        **Plaintiff,**

v.                                       **Case No: 6:21-cv-218-PGB-EJK**

**FAMILY DOLLAR STORES OF
FLORIDA, LLC,**

        **Defendant.**
_____/

## ORDER

This cause is before the Court on Defendant Family Dollar Stores of Florida, LLC's ("**Family Dollar**") Motion for Summary Judgment. (Doc. 80 (the "**Motion**")). The Plaintiff filed a Response in Opposition, (Doc. 81), and upon due consideration, the Motion is denied.

### I. BACKGROUND

This negligence action arises out of Plaintiff's slip and fall on Defendant's property. On October 22, 2018, the Plaintiff visited the Family Dollar store, and while walking down an aisle slipped and fell on a transitory foreign substance, causing her to sustain injuries. (Doc. 56, ¶ 7).

### II. STANDARD OF REVIEW

A court may only "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party bears the initial burden

of "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" to support its position that it is entitled to summary judgment. FED. R. CIV. P. 56(c)(1)(A). "The burden then shifts to the non-moving party, who must go beyond the pleadings, and present affirmative evidence to show that a genuine issue of material fact exists." *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006). "The court need consider only the cited materials" when resolving a motion for summary judgment. FED. R. CIV. P. 56(c)(3); *see also HRCC, LTD v. Hard Rock Café Int'l (USA), Inc.*, 703 F. App'x 814, 816–17 (11th Cir. 2017) (per curiam) (holding that a district court does not err by limiting its review to the evidence cited by the parties in their summary judgment briefs).[1]

An issue of fact is "genuine" only if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine dispute of material fact exists, the Court must read the evidence and draw all factual inferences therefrom in the light most favorable to the non-moving party and must resolve any reasonable doubts in the non-movant's favor. *Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1136 (11th Cir. 2007). But, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could

---

[1] "Unpublished opinions are not controlling authority and are persuasive only insofar as their legal analysis warrants." *Bonilla v. Baker Concrete Constr., Inc.*, 487 F.3d 1340, 1345 (11th Cir. 2007).

reasonably find for that party." *Brooks v. Cty. Comm'n of Jefferson Cty.*, 446 F.3d 1160, 1162 (11th Cir. 2006) (quoting *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990)).

### III. DISCUSSION

The Defendant moves for summary judgement on the issue of liability—specifically, Defendant's actual and constructive notice of the spill. (Doc. 80).

#### A. Liability

"A landowner owes a business invitee two independent duties: (1) to maintain the premises in a reasonably safe condition, and (2) to give warning of concealed perils." *De Cruz-Haymer v. Festival Food Mkt., Inc.*, 117 So. 3d 885, 888 (Fla. 4th DCA 2013). The open and obvious nature of a hazard may discharge a landowner's duty to warn, but it will not discharge the landowner's duty to maintain the premises. *Dampier v. Morgan Tire & Auto, LLC*, 82 So. 3d 204, 206 (Fla. 5th DCA 2012). In the latter case, the obviousness of the danger creates an issue of fact regarding the plaintiff's comparative negligence. *Burton v. MDC PGA Plaza Corp.*, 78 So. 3d 732, 735 (Fla. 4th DCA 2012).

The Florida Legislature created a negligence statute specific to slip and fall actions. FLA. STAT. § 768.0755(1).[2] "If a person slips and falls on a transitory foreign substance in a business establishment, the injured person must prove that the business establishment had actual or constructive knowledge of the dangerous

---

[2] "Federal courts sitting in diversity apply the substantive law of the state in which the case arose." *Pendergast v. Sprint Nextel Corp.*, 592 F.3d 1119, 1132 (11th Cir. 2010).

3

condition and should have taken action to remedy it." *Id.* Actual knowledge exists "when a business owner's employees or agents know of or create the dangerous condition." *Palavinci v. Wal-Mart Stores E., LP*, 787 F. App'x 1007, 1010 (11th Cir. 2019). "Constructive knowledge may be proven by circumstantial evidence showing that: (a) The dangerous condition existed for such a length of time that, in the exercise of ordinary care, the business establishment should have known of the condition; or (b) The condition occurred with regularity and was therefore foreseeable." FLA. STAT. § 768.0755(1).

As to the first prong of the constructive knowledge analysis, the length of time can be established through circumstantial evidence. *See Altman v. Publix Supermarkets, Inc.*, 579 So. 2d 351 (Fla. 3d DCA 1991). In the case of a spill, circumstantial evidence may include "dirt, scuffing, or tracks in a substance." *Woods v. Winn Dixie Stores, Inc.*, 621 So. 2d 710, 711 (Fla. 3d DCA 1993); *but see Delgado v. Laundromax, Inc.*, 65 So. 3d 1087, 1090 (Fla. 3d DCA 2011) ("[T]he mere presence of [a substance] on the floor is not enough to establish constructive notice.").

The Defendant contends the record evidence demonstrates there was neither actual nor constructive knowledge of any dangerous condition caused by a clear liquid that may have been on the floor before the Plaintiff fell. (Doc. 80, p. 7). And Defendant argues there is insufficient evidence to show the dangerous condition existed long enough that in the exercise of reasonable care it should have been known to the Defendant. (*Id.* at p. 10). The Plaintiff's response in opposition

is supported by the deposition testimony of the Plaintiff, Defendant's assistant manager, Defendant's corporate representative, and photographs of the scene. (Docs. 81-1, 81-2, 81-3, 81-4). The Court finds the testimony and photographic evidence creates a material issue of fact on both actual and constructive notice.

Assistant Manager Karen Chambers testified that she opened the store at 8:00 a.m. and another employee would not arrive until 2:00 or 3:00 p.m. (Doc. 81-3, 11:4–11). While she did not inspect the shopping aisles at specific intervals, she would "try to take a different route from the register back to where [she] was working freight . . . looking around on the floor to see if something, maybe, had fallen off a shelf or, maybe, there was a spill something." (*Id.* 13:13–19). Ms. Chambers stated that on average it took her 15–30 minutes to inspect each aisle due to her other responsibilities. (*Id.* 15:17–25). So, on average, she would not return to the first aisle until 75 to 150 minutes had passed. (*Id.*).

Ms. Chambers did not recall specific training on cleaning up spills, but she described it as common sense. (*Id.* 10:7–21). Ms. Chambers cleaned up spills in the store once every 10 to 14 days and testified she knew spills happened as a regular occurrence. (*Id.* 21:24–22:9, 23:7–12). On the day of the accident, Ms. Chambers recalled seeing the detergent on the floor after the Plaintiff fell. (*Id.* 24:3–19). She testified that the detergent had been sitting on "one of those U-boats for freight and it was inside of a box[,] and I think it was laundry detergent that had been busted." (*Id.* 24:22–25). And Ms. Chambers recalls the liquid detergent "was not all over the floor, but like, a puddle, like where it drips and the puddle." (*Id.* 33:3–

5

6). Ms. Chambers opined that "[m]ore than likely the container it was in was cracked, busted, and it might have leaked, you know, it might've been knocked over by a customer and not picked up. It could have been a number of things, but I'm not sure of the exact reason for it." (*Id*. 34:7–11).

There are a few important take-aways from Ms. Chambers' testimony. First, she testified there was no specific regiment for inspecting the aisles. Ms. Chambers did her best to walk down each aisle in between her other tasks, but the store was understaffed. Secondly, she knew spills occurred at the store, since she cleaned them up on a regular basis. Thirdly, since the detergent was "inside of a box" when it leaked, a reasonable jury could find the bottle was damaged during unloading and thereafter leaked onto the floor. Ms. Chamber's speculation that a customer may have knocked over the detergent is inconsistent with the record, especially since the bottle was not located on the floor at the time of the accident.

The Defendant's corporate representative, Mr. Fred Hernandez, was shown the Team Member Handbook at his deposition. (Doc. 81-4, 61:13–22). He admitted the store lacked documentation showing its employees complied with established safety procedures on the day of the accident. (*Id*. 8:21–9:19, 10:20–11:2). Mr. Hernandez also acknowledged that the photographs of the accident scene depicting debris on the aisle does not comply with the safety requirements established in the handbook. (*Id*. 9:24–10:19).

Finally, Ms. Ellis testified that the store was busy on the day of her accident, and she was in the store less than 5 minutes before she slipped and fell. (Doc. 81-

6

1, 46:22–25, 50:5–7). She was walking with her child towards the aisle with diapers when she slipped and fell and did not see the liquid before falling. (*Id.* 51:8–14, 52:11–13). After she fell, her pants were wet with the laundry detergent, and being pregnant she thought her water had broken. (*Id.* 52:19–53:8). Ms. Ellis described the liquid detergent as a "big blob, big mess everywhere." (*Id.* 53:16–54:3, 66:1–5). Ms. Ellis testified when she fell and landed in a seated position the liquid ran the length of her legs. (*Id.*). When shown photographs of the scene, Ms. Ellis noted that "[t]he pavers along the edge of the cardboard box, you can see are all soaking wet from the detergent." (*Id.* 58:9–14). The sheer size of the puddle and the fact that it permeated the cardboard box indicates the spill was not a recent event.

      The evidence is such that a reasonable jury could find the Defendant created the spill by mishandling the box containing the liquid detergent and therefore had actual knowledge of the spill. Alternatively, a reasonable jury could find the liquid—due to the size of the spill and the fact that it had permeated the cardboard box—had existed long enough for the Defendant to have constructive knowledge of the spill. The Defendant's failure to properly staff the store, and the lax approach to conducting routine inspections, combined with the frequency of spills, could cause a reasonable jury to find the spill and subsequent accident were foreseeable. Accordingly, summary judgement is inappropriate, and Defendant's motion is denied.

## IV. CONCLUSION

For the foregoing reasons, the Defendant's Motion for Summary Judgment (Doc. 80) is **DENIED**.

**DONE AND ORDERED** in Orlando, Florida on May 3, 2023.

_____
PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record
Unrepresented Parties

8